IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC. | : |
| | : |
| v. | : Civil Action No. DKC 10-2967 |
| | : |
| ARNELL T. MUMFORD, et al. | : |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this piracy action is a motion for summary judgment filed by Plaintiff J & J Sports Productions, Inc. ("J & J Sports"). (ECF No. 27). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

**I.   Background**

**A.   Factual Background**

The following facts are uncontested. J & J Sports held the distribution rights to the broadcast of the May 1, 2010, Mayweather/Mosley professional boxing match ("the Broadcast"). (ECF No. 27-1, Gagliardi Decl., ¶ 3). Its license covered the state of Maryland, and it sublicensed the Broadcast to commercial establishments for a fee. (*Id.*). Defendants Arnell T. Mumford and Half Time Sports & Entertainment, Inc. ("Half

Time Sports"),[1] did not purchase a license for this event.  (*Id.* ¶ 5).

Based on prior experience and research, J & J Sports suspected that its broadcasts of sporting events were being pirated for commercial use by establishments throughout the country.  (*Id.* ¶ 7).  As a result, J & J Sports hired auditors to canvass and identify non-subscribing establishments during its broadcasts.  (*Id.* ¶¶ 9-10).  On May 1, 2010, one such auditor went to Half Time Sports and observed the Broadcast on several of Half Time Sports's televisions and saw roughly fifty patrons viewing the televisions.  (ECF No. 27-2, Lonstein Decl., at 53-56).[2]

**B.   Procedural Background**

J & J Sports commenced this action on October 21, 2010, alleging willful violations of 47 U.S.C. § 553 and § 605 for showing the Broadcast.  (ECF No. 1).  Count One of the complaint alleges that Defendants used an illegal satellite receiver to

---

[1] According to the complaint, the "exact nature" of Half Time Sports as a business entity is unknown.  (ECF No. 1 ¶ 12).  Mr. Mumford is described as "the individual with supervisory capacity and control over the activities" at Half Time Sports on May 1, 2010.  (*Id.* ¶ 9).

[2] Because the Lonstein declaration contains several different attachments that are each independently paginated, the page numbers cited are those provided by the ECF system.

intercept J & J Sports's signal or broadcast, violating § 605. Count Two alleges, in the alternative, that Defendants intercepted J & J Sports's signal or broadcast via cable system, violating § 553.

When Defendants did not initially respond to the complaint, J & J Sports filed a Notice of Intention to Move for Default on December 9, 2010. (ECF No. 6). Mr. Mumford then filed a *pro se* answer on December 13, 2010. (ECF No. 7). That answer was accepted by the court on behalf of Mr. Mumford only and not on behalf of Half Time Sports, as corporations must be represented by an attorney pursuant to Local Rule 101.1.a. (ECF No. 8). On January 21, 2011, J & J Sports formally moved for entry of default as to Half Time Sports (ECF No. 9), and Half Time Sports's default was subsequently entered on March 11, 2011 (ECF No. 10). On April 12, 2011, attorney Evan Goitein entered his appearance on behalf of all Defendants. (ECF No. 13). Upon Defendants' motion (ECF No. 14), the court set aside Half Time Sports's default (ECF Nos. 16, 17). On June 2, 2011, Half Time Sports filed an answer. (ECF No. 18).

On October 24, 2011, J & J Sports filed the present motion for summary judgment on the issue of Defendants' liability.

(ECF No. 27).[3]  Defendants responded on November 10, 2011.  (ECF
No. 28).  J & J Sports replied on November 16, 2011.  (ECF No.
29).

## II.  Standard of Review

A court may enter summary judgment only if there is no
genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law.  *See* Fed.R.Civ.P.
56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);
*Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary
judgment is inappropriate if any material factual issue "may
reasonably be resolved in favor of either party."  *Anderson v.
Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co.
LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.
2001).

The party moving for summary judgment has the initial
burden to demonstrate that there is no genuine dispute of
material fact and that the movant is entitled to judgment as a
matter of law.  In asserting that there is no genuine dispute of
fact, a moving party must cite to materials in the record or
show that the fact cannot be genuinely disputed.  For instance,

---

[3] Although the motion seeks summary judgment "in its
entirety" (ECF No. 27, at 1), the accompanying memorandum of law
states that J & J Sports seeks summary judgment "as to
liability" against Defendants (ECF No. 27-4, at 10).

a moving party may assert that the opposing party cannot produce
admissible evidence to support a fact on which that adverse
party will have the burden of proof.   Thereafter, a party may
"object that the material cited [by the other party] cannot be
presented in a form that would be admissible in evidence."
Fed.R.Civ.P. 56(c)(2).   In the face of such an objection, "[t]he
burden is on the proponent to show that the material is
admissible as presented or to explain the admissible form that
is anticipated."   Fed.R.Civ.P. 56(c)(2) advisory committee notes
(2010 amendment).

"A party opposing a properly supported motion for summary
judgment 'may not rest upon the mere allegations or denials of
[his] pleadings,' but rather must 'set forth specific facts
showing that there is a genuine issue for trial.'"   *Bouchat v.
Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir.
2003) (quoting former Fed.R.Civ.P. 56(e)).   "A mere scintilla of
proof . . . will not suffice to prevent summary judgment."
*Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   "If the
evidence is merely colorable, or is not significantly probative,
summary judgment may be granted."   *Liberty Lobby*, 477 U.S. at
249-50 (citations omitted).   At the same time, the court must
construe the facts that are presented in the light most

favorable to the party opposing the motion.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

## III. Analysis

J & J Sports contends that it is entitled to summary judgment as to liability because "Defendants have admitted by default that they willfully violated 47 U.S.C. § 553 and § 605 by exhibiting without authorization the Mayweather/Mosley boxing program in violation of the exclusive rights of Plaintiff, who is the sole lawful possessor of the rights to distribute said program."  (ECF No. 27-4, at 13).   Though J & J Sports ostensibly asserts entitlement to summary judgment on both Counts One and Two, its motion advances a substantive argument as to Count One only, the § 605 claim.  (*See* ECF No. 27-4, at 14-18).[4]   In response, Defendants merely contest J & J Sports's reliance on their default admissions to support the motion, but they do not otherwise contest the facts presented by J & J Sports.  (ECF No. 28-1).

---

[4] The complaint recognizes that J & J Sports can ultimately only recover damages under one of the counts, not both.  (*See* ECF No. 1 ¶ 33).  Indeed, as a court in this district observed, liability under § 605 and § 553 is mutually exclusive.  *J & J Sports Prods., Inc. v. MayrealII, LLC*, --- F.Supp.2d ---, 2012 WL 346649, at *2 (D.Md. Feb. 1, 2012).

## A. Admissions by Default

Federal Rule of Civil Procedure 36 governs requests for admissions. It provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed.R.Civ.P. 36(a)(3). Moreover, unanswered requests for admission can serve as the basis for summary judgment. *Vales v. Preciado,* 809 F.Supp.2d 422, 426 (D.Md. 2011) ("'[U]nanswered requests for admissions may properly serve as a basis for summary judgment and with a failure to make a timely response, the truth of the matter contained in the request for admission is conclusively established and may serve as the basis for the court's consideration of a motion for summary judgment.'" (quoting *Donovan v. Porter*, 584 F.Supp. 202, 207-08 (D.Md. 1984))); *see also Batson v. Porter*, 154 F.2d 566, 568 (4th Cir. 1946) (holding that unanswered requests for admissions are admitted and may support summary judgment, "unless a sworn statement is filed in which they are specifically denied or specific reasons are given why they cannot be truthfully admitted or denied"). In *Vales*, because the defendant failed to respond to the plaintiff's request for admissions, to object, to seek an extension of time to respond,

7

to ask to rescind the admissions, or to challenge the admissions on summary judgment, the admissions were deemed admitted for purposes of assessing the summary judgment motion. *Vales,* 809 F.Supp.2d at 427.

Similarly, here, Defendants have not responded to J & J Sports's requests for admission, raised any objections, sought an extension of time to answer them, or challenged them with contrary evidence on summary judgment.[5]  Instead, Defendants merely argue that "it does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline is missed." (ECF No. 28-1, at 2).  To that end, they argue, somewhat ineloquently, that their admissions should be withdrawn. (*Id.*).

"A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Fed.R.Civ.P. 36(b).  With some exceptions, "the court may permit withdrawal or amendment if it would promote presentation on the merits of the action, and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the

---

[5] According to J & J Sports, on April 13, 2011, it served requests for admissions on Mr. Mumford, and on August 25, 2011, it served requests for admissions on Half Time Sports.  (ECF No. 27-4, at 3-4).  To date, Defendants have not responded to the requests.  Defendants do not dispute this history.

merits." *Id.* "The court has considerable discretion over the withdrawal of admissions once they have been made." *Kress v. Food Emp'rs Labor Relations Ass'n*, 285 F.Supp.2d 678, 681 (D.Md. 2003) (internal quotations omitted).

Neither prong of Rule 36(b), however, weighs in favor of withdrawal of Defendants' admissions. The first prong — promoting presentation of the case on the merits — contemplates "facilitat[ing] the development of the case in reaching the truth." *McClanahan v. Aetna Life Ins. Co.*, 144 F.R.D. 316, 320 (W.D.Va. 1992). Here, not only have Defendants ignored J & J Sports's requests for admissions, they have apparently failed altogether to respond to any of J & J Sports's requests for discovery. (ECF No. 27-4, at 5).[6] Thus, presentation on the merits is not an option.

The second prong — prejudice to the requesting party — contemplates "the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered." *McClanahan*, 144 F.R.D. at 320. For example, although the inability to rely on default admissions for summary judgment purposes is not in and of itself considered prejudicial

---

[6] Discovery originally closed per the court's scheduling order on July 27, 2011. (ECF No. 11). That deadline was extended by two months to September 27, 2011. (ECF No. 24).

to the requesting party under Rule 36(b), *see Conlon v. United States*, 474 F.3d 616, 624 (9th Cir. 2007), where a party reasonably foregoes pursuing discovery by relying upon default admissions and then uses those admissions as a basis for summary judgment, withdrawal of the admissions may be prejudicial, *see id.* (holding that a party who "relied on the admissions for a total of two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that [the unresponsive party] intended to file a motion to withdraw his admissions" would be prejudiced if it were prohibited from using the default admissions on summary judgment). As one district court in the Fourth Circuit has explained:

> When a party directs its resources, fiscal, physical and otherwise, to those issues it reasonably believes are the only ones left to be resolved, an abrupt change in the status of the litigation occasioned by motion of opposing counsel, which had it occurred early on would likely have effected a distinctly different allocation of resources, should only be allowed upon a showing that the Rule 36(b) test is met by clear and convincing evidence.

*Branch Banking & Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 659 (E.D.N.C. 1988).

In this case, though it was not obligated to, on August 25, 2011, and October 13, 2011, J & J Sports put Mr. Mumford and Half Time Sports, respectively, on notice that it considered its

requests for admission deemed admitted and that it would likely rely on those admissions for motions practice. (*See* ECF Nos. 23, 26). In fact, in its September 26, 2011, status report to the court, J & J Sports also noted that it specifically intended to move for summary judgment. (ECF No. 25). Mr. Mumford was on notice for at least two months about the focus of J & J Sports's discovery efforts, but did not indicate any intent to move to withdraw his admissions. Half Time Sports likewise stayed silent despite J & J Sports's diligence. It therefore was not unreasonable for J & J Sports to rely on Defendants' default admissions in conducting its discovery strategy. Especially given that discovery has closed and Defendants have failed to produce any materials, to permit Defendants to withdraw their admissions now would certainly prejudice J & J Sports as it would have no alternative evidence with which to develop its case. Taken together, these factors militate against withdrawal of Defendants' default admissions.

Defendants' reliance on *Union Pacific Railroad Co. v. Baltimore & Annapolis Railroad Co.*, No. SKG-08-2685, 2009 WL 3633349 (D.Md. Oct. 27, 2009), in which a party's default admissions were withdrawn, is misplaced. Unlike in the present case, the parties in *Union Pacific* were in constant contact about discovery, and the defendant ultimately responded to the

plaintiff's requests for admission, albeit one month late. *Id.* at *2. Furthermore, when the plaintiff subsequently filed a motion for summary judgment, relying in part on the default admissions instead of the tardy admissions, the defendant affirmatively moved to withdraw and replace the default admissions with the tardy admissions. *Id.* at *2-3. Thus, in contrast to the instant situation, the withdrawal of the default admissions in *Union Pacific* enabled a decision of that case on the merits, and the plaintiff did not suffer prejudice.[7]

In sum, the requirements for withdrawal of default admissions under Rule 36(b) are not met here, and the admissions contained in J & J Sports's unanswered requests for admission are deemed admitted for the purposes of summary judgment.

**B. Summary Judgment**

As noted above, J & J Sports seeks summary judgment as to liability for Defendants' alleged violation of 47 U.S.C. § 605(a). That statute reads, in relevant part:

---

[7] Defendants' brief mention of *United States v. Turk*, 139 F.R.D. 615 (D.Md. 1991), which also permitted withdrawal of a party's default admissions, is similarly unavailing. Unlike here, in *Turk*, the defendant was *pro se*, and "vigorously denie[d] the claims against him." *Id.* at 617. The court allowed the defendant to withdraw his default admissions because there was a possible genuine issue of material fact and because, ultimately, it was "reluctant to use Rule 36 procedures as a snare for this unwary *pro se* defendant." *Id.* at 618.

> No person not being authorized by the sender
> shall intercept any radio communication and
> divulge or publish the existence, contents,
> substance, purport, effect, or meaning of
> such intercepted communication to any
> person. No person not being entitled
> thereto shall receive or assist in receiving
> any interstate or foreign communication by
> radio and use such communication (or any
> information therein contained) for his own
> benefit or for the benefit of another not
> entitled thereto.

47 U.S.C. § 605(a). Thus, to prove a violation of § 605(a), J & J Sports must show that Defendants, without authorization, received and divulged the Broadcast. *See That's Entm't, Inc. v. J.P.T., Inc.*, 843 F.Supp. 995, 999 (D.Md. 1993) (finding a violation of § 605 by the defendants' "unlawful interception and receipt of the [transmission] and by their unauthorized broadcast of that transmission to [their] patrons"); *see also J & J Sports Prods., Inc. v. Centro Celvesera La Zaona, LLC*, No. 5:11-CV-00069-BR, 2011 WL 5191576, at *1 (E.D.N.C. Nov. 1, 2011) (stating that "§ 605 prohibits the unauthorized interception and broadcast of satellite transmissions").

Here, the proffered default admissions establish that Mr. Mumford, in his individual capacity, violated § 605. First, Mr. Mumford has admitted that "he had the capability of receiving . . . satellite television broadcasts on May 1, 2010." (ECF No. 27-2, Lonstein Decl., at 14 (Pl.'s Req. for Admis. No. 9)). Second, he has admitted that he "did, in fact, exhibit a portion

13

of the broadcast of the May 1, 2010, Mayweather/Mosley Program, and/or any of its undercard programs." (*Id.* (Pl.'s Req. for Admis. No. 13)). Third, he has admitted that he "was not authorized by Plaintiff to exhibit the broadcast of the May 1, 2010, Mayweather/Mosley Program, and/or any of its undercard programs in the establishment known as Half Time Sports & Entertainment on May 1, 2010." (*Id.* at 13 (Pl.'s Req. for Admis. No. 3)). Finally, he has admitted that he "received a financial benefit from the operations of [Half Time Sports] on May 1, 2010." (*Id.* (Pl.'s Req. for Admis. No. 4). Thus, J & J Sports has met its evidentiary burden and shown that Mr. Mumford illegally received and divulged the Broadcast. As Defendants have not adduced any evidence, summary judgment is warranted in favor of J & J Sports as to Mr. Mumford's liability under § 605.

Similarly, through the default admissions, J & J Sports has established that Half Time Sports directly violated § 605. Half Time Sports has admitted that it "had the capability of receiving . . . satellite television broadcasts on May 1, 2010." (*Id.* at 34 (Pl.'s Req. for Admis. No. 9)). In addition, it has admitted that it "did, in fact, exhibit a portion of the broadcast of the May 1, 2010 Mayweather/Mosley Program, and/or any of its undercard programs." (*Id.* (Pl.'s Req. for Admis. No. 13)). It has admitted that it "was not authorized by Plaintiff

14

to exhibit any portion of the broadcast of the May 1, 2010, Mayweather/Mosley Program, and/or any of its undercard programs." (*Id.* at 35 (Pl.'s Req. for Admis. No. 16)). And, it has admitted that it "received direct financial benefit from the occurrences . . . on May 1, 2010." (*Id.* (Pl.'s Req. for Admis. No. 21). Thus, as it did with Mr. Mumford, J & J Sports has put forth sufficient evidence to show that Half Time Sports illegally received and divulged the Broadcast.[8] Without evidence to the contrary, J & J Sports's motion for summary judgment must accordingly be granted as to Half Time Sports's liability.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be granted.  A separate order will follow.

                                        /s/
                             _____
                             DEBORAH K. CHASANOW
                             United States District Judge

---

[8] J & J Sports has also attached other evidence that further shows Half Time Sports's liability.  The affidavit of Jonathan Martin and its accompanying video show that Half Time Sports received and divulged the Broadcast by displaying it on eight televisions to roughly fifty patrons.  (ECF No. 27-2, at 53-56). The affidavit of Joseph Gagliardi, president of J & J Sports, shows that Half Time Sports was not authorized to exhibit the Broadcast.  (ECF No. 27-1 ¶ 11).