```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
                                    :
J & J SPORTS PRODUCTIONS, INC.
                                    :

     v.                             :   Civil Action No. DKC 10-2967
                                    :
ARNELL T. MUMFORD, et al.
                                    :
```

**MEMORANDUM OPINION**

On October 21, 2010, Plaintiff J & J Sports Productions, Inc., commenced this action against Defendants Half Time Sports & Entertainment, Inc., d/b/a Half Time Sports & Entertainment ("Half Time Sports"), and its principal, Arnell T. Mumford. The complaint alleged that Plaintiff held the distribution rights to the May 1, 2010, broadcast of a boxing match, which Defendants unlawfully intercepted, in violation of 47 U.S.C. §§ 605(a) and 553, and exhibited for the patrons of Half Time Sports, a bar and restaurant in White Plains, Maryland

After service of process was effected, Mr. Mumford filed an answer on December 13, 2010, purportedly on behalf of both defendants. He was promptly advised by the clerk that the answer was accepted as to him, but not as to the corporation, which was required to be represented by counsel. When counsel did not promptly enter an appearance on behalf of Half Time Sports, Plaintiff moved for entry of default against the

corporate entity.  The clerk entered default on March 11, 2011, and Plaintiff filed a motion for default judgment soon thereafter.  While that motion was pending, however, counsel entered an appearance on behalf of both defendants and moved to set aside the default.  By a memorandum opinion and order issued May 3, 2011, the court granted that motion, setting aside the entry of default against Half Time Sports, and denied Plaintiff's motion for default judgment.  Half Time Sports filed its answer on June 2, 2011.

A status report submitted on September 26, 2011, indicated that Defendants had failed to respond to Plaintiff's discovery requests and that Plaintiff intended to file a notice of facts deemed admitted by the corporate defendant in advance of a motion for summary judgment.  That notice was filed on October 13, 2011, and was followed by Plaintiff's motion for summary judgment on October 24.

In support of its motion for summary judgment, Plaintiff provided evidence demonstrating that it held the exclusive distribution rights to the broadcast in question; that Half Time Sports was not among the business entities that purchased a sublicense to exhibit the event; and that the cost of purchasing the broadcast was $4200.00 for an establishment with seating for between fifty-one and one hundred customers.  The attached affidavit of private investigator Jonathan Martin recited that

Mr. Martin went to Half Time Sports on May 1, 2010, at approximately 9:27 p.m.  He was charged an entrance fee of $15.00 and observed the event broadcast on approximately eight televisions inside.  Mr. Martin estimated the establishment as having a seating capacity of between fifty and one hundred customers and he observed between forty and fifty patrons present at various times.

On April 20, 2012, the court issued a memorandum opinion and order granting Plaintiff's motion and entering judgment in their favor as to the first count of the complaint.  (ECF Nos. 30, 31).  The parties were directed to submit memoranda addressing the appropriate measure of damages.[1]  Plaintiff submitted its memorandum on May 17 (ECF No. 33) and Defendants filed theirs on June 4 (ECF No. 34).  The court's assessment of damages is provided herein.

Plaintiff seeks an award of statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000; enhanced damages pursuant to § 605(e)(3)(C)(ii) in the amount of $30,000; and attorneys' fees and costs totaling $5,446.25. Defendants contend that a statutory damages award of only $2,200 is appropriate; that enhanced damages should not be awarded; and

---

[1] Plaintiff sought summary judgment as to liability only, requesting that it be permitted to prove damages in a subsequent submission.  Defendants filed a brief memorandum opposing Plaintiff's motion, but presented no evidence of their own.

3

that any award of attorneys' fees should be "reduced to consider their proportionality to the damages award and Defendants' (in)ability to pay." (ECF No. 34, at 7).

Pursuant to 47 U.S.C. § 605(e)(3)(C)(i), upon establishing a violation of § 605(a), "[d]amages . . . shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses":

> (I) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of the profit attributable to factors other than the violation; or
>
> (II) the party aggrieved may recover an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]

47 U.S.C. § 605(e)(3)(C)(i) (emphasis removed). Additionally, § 605(e)(3)(C)(ii) provides that "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation[.]"

Where, as here, the plaintiff elects an award of statutory, rather than actual, damages, courts have employed a variety of methods in determining what constitutes a "just" award:

> Some courts fashion an award by considering the number of patrons who viewed programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation.

*Joe Hand Promotions, Inc. v. Scott's End Zone, Inc.*, 759 F.Supp.2d 742, 750 (D.S.C. 2010) (internal citations omitted). While there is a dearth of case law discussing the virtues of one of these approaches over the others in a given circumstances – indeed, there appears to be no consensus as to the goal of a statutory damages award – given that enhanced damages are available to deter future violations, the court accepts the view that a statutory damages award should, as best as possible, approximate the plaintiff's actual damages. *See Joe Hand Promotions, Inc. v. Flamingo's Food & Spirits, L.L.C.*, No. 0:11-2431-MBS, 2012 WL 2048192, at *3 (D.S.C. June 5, 2012) (finding that "an award of $900 [*i.e.*, the amount it would have cost the defendant to exhibit the broadcast legally] fairly approximates the actual harm to Plaintiff resulting from Defendants' unauthorized exhibition of the Program"); *see also J & J Sports*

*Productions, Inc. v. RBP, Inc.*, 2012 WL 5947537, at *4 (D.Md. Nov. 27, 2012) ("If only statutory damages were awarded, there would be little to deter Defendants or other similarly situated businesses from risking future violations"). The instant record reflects that Half Time Sports had seating for between fifty and one hundred patrons and that the cost of legally purchasing a sublicense for an establishment of that size would have been $4,200.

In arguing that the maximum allowable amount of statutory damages – a flat sum of $10,000 – should be awarded, Plaintiff asserts that its losses due to Defendants' violation go beyond the mere cost of the fee Defendants would have paid to exhibit the broadcast lawfully. That is so, according to Plaintiff, because businesses that might have otherwise purchased a sublicense, and then recouped the fee from customers by charging an entrance fee, are deterred from doing so where customers may view the program for free at establishments that unlawfully exhibit the broadcast. While this may be a persuasive argument in some circumstances, the evidence presented by Plaintiff here reflects that Defendants charged a fifteen dollar admission fee to enter Half Time Sports on the evening in question. Moreover, no showing has been made that any other establishment in the area that lawfully broadcasted the event charged a greater amount. Thus, there is no evidentiary basis for a finding that

another business might have been dissuaded from purchasing a license.  Plaintiff further contends that the maximum award is justified because it has "expended significant sums to combat rampant piracy and the loss of business to Plaintiff continues until pirates are deterred." (ECF No. 33, at 9-10).  As noted, however, deterrence of future violations is properly addressed by an enhanced damages award, *see* 47 U.S.C. § 605(e)(3)(C)(ii), and recovery of litigation expenses are provided by statute, *see* § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails").[2]

Defendants argue – correctly, in the court's view – that statutory damages should approximate the amount the Plaintiff is out-of-pocket due to the violation, but they erroneously contend that the cost of lawfully exhibiting the broadcast would have been $2,200, based on the fact that the investigator observed no more than fifty patrons at the bar.  The pricing set forth on Plaintiff's "rate card" for the event (ECF No. 27-1, at 16) is

---

[2] It bears mention that this plaintiff, in particular, has brought many similar cases in this district and elsewhere.  In the vast majority of cases, the defendant never enters an appearance and judgments by default award damages far in excess of the fee a sublicensee would have paid.  While Plaintiff is certainly entitled to enforce its rights in this court, it is disingenuous for it to suggest that the expense associated with prosecuting these actions provides a basis for a heightened statutory damages award.

based on seating capacity, not the number of patrons who actually observed the event.

In sum, the statutory damages award that "the court considers just," 47 U.S.C. § 605(e)(3)(C)(i)(II), is an approximation of the damages actually incurred by Plaintiff due to Defendants' violation. The record reflects that Plaintiff would have received $4,200 if Defendants had lawfully purchased the broadcast. Accordingly, Plaintiff is entitled to an award of statutory damages in that amount.

The considerations in determining whether enhanced damages are warranted – and, if so, in what amount – are more clear-cut. As Judge Nickerson explained in *J & J Sports Productions, Inc. v. Quattrocche*, No. WMN-09-CV-3420, 2010 WL 2302353, at *2 (D.Md. June 7, 2010):

> In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks.

The fact that Defendants intercepted and exhibited the broadcast in question willfully and for direct or indirect commercial advantage cannot be doubted. "After all, '[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.'" *Joe Hand*

*Promotions, Inc. v. Bougie, Inc.*, No. 109CV00590TSEIDD, 2010 WL 1790973, at *6 (E.D.Va. Apr. 12, 2010) (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)).  While there is no evidence of repeat violations, that Half Time Sports promoted its exhibition of the event, or that premiums were charged for food and drinks, the record reflects that a sizeable admission fee was charged and, presumably, collected from at least fifty patrons.  Notably, the record further demonstrates that Half Time Sports "closed due to financial hardship" in May 2011 and that Mr. Mumford is experiencing "personal financial hardship" as evidenced by foreclosure proceedings on his home.  (ECF No. 34-2, Mumford Decl.).

Courts have generally awarded "'anywhere from three to six times the statutory damages award for enhanced damages[.]'" *J & J Sports Productions, Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*, No. 2:09-03141-DCN-RSC, 2010 WL 1838432, at * (D.S.C. Apr. 5, 2010) (quoting *J & J Sports Productions, Inc. v. Ribiero*, 562 F.Supp.2d 498, 502 (S.D.N.Y. 2008)).  In *Quattrocche*, 2010 WL 2302353, at *3, where the defendant charged a five dollar admission fee for its unlawful exhibition of a boxing match, Judge Nickerson calculated damages by "multiplying the statutory damages by a factor of 5."  While Defendants charged an admission fee three times greater, the risk of future violations

9

is lessened considerably in light of their financial hardship; thus, a sizeable enhanced damages award is likely not necessary to achieve the goal of specific deterrence, although it might still have some general deterrent effect.[3]  In cases where no evidence is presented that an admission fee was charged, courts in this district have typically multiplied the statutory damages amount by a factor of three to calculate enhanced damages.  *See J & J Sports Productions, Inc. v. Castro Corp.*, No. 11-cv-00188-AW, 2011 WL 5244440, at *5 (D.Md. Nov. 1, 2011); *J & J Sports Productions, Inc. v. Greene*, No. DKC 10-0105, 2010 WL 2696672, at *5 (D.Md. July 6, 2010).  Considering the circumstances presented here, this court will do the same.  Accordingly, in addition to statutory damages in the amount of $4,200, Plaintiff will be awarded enhanced damages of $12,600.

In support of a request for attorneys' fees and costs, Plaintiff presents the purported affidavit of its counsel, Wayne D. Lonstein.  (ECF No. 33, at 46-54).  This document, which contains the electronic signatures of both Mr. Lonstein and a notary public, is not in proper form.  While Mr. Lonstein could sign the affidavit electronically, *see* § III.F.1 of the court's electronic filing requirements and procedures in civil cases

---

[3] Plaintiff contends that an enhanced damages award of $30,000 is necessary to "provide a deterrent to further piracy consistent with the intent of the Legislature in drafting the piracy statutes." (ECF No. 33, at 21).  Deterrence, however, is not a particularly compelling goal in this case.

10

manual, the notary could not do so unless a signature page containing her original signature was attached or Mr. Lonstein certified that he maintained a signed copy with an original signature available for inspection, *see id*. at § III.F.4. Because the document also does not contain language attesting to its truth under penalty of perjury, such that it could be admissible as an unsworn declaration pursuant to 28 U.S.C. § 1746, it does not constitute competent evidence upon which the court may enter judgment.[4]  Plaintiff may renew its request for attorneys' fees and costs by submitting a supplemental petition, in proper form, within thirty days.

    A separate order will follow.

                                                            _____/s/_____
                                                            DEBORAH K. CHASANOW
                                                             United States District Judge

---

[4] In any event, the court would be unable to grant the requested amounts because Mr. Lonstein does not set forth sufficient information for the court to assess the reasonableness of his hourly rate. *See* Local Rules, Appendix B. Moreover, the document purports to attach invoices establishing the fees of process servers, but no such invoices are attached.